IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-00531-FL

| | |
|---|---|
| **Donald Daniels**, | |
| Plaintiff, | |
| v. | **Order** |
| **Hyster-Yale Group, Inc.**, | |
| Defendant. | |

Plaintiff Donald Daniels sued Defendant Hyster-Yale Group, Inc. (HYG) for unlawful retaliation under the Sarbanes-Oxley Act and brought a claim under the North Carolina Wage and Hour Act for money HYG allegedly owed him. Second Am. Compl. ¶¶ 207−36, D.E. 11. While working as a national accounts manager (NAM) for HYG, Daniels reported the allegedly fraudulent activity of an executive employee to HYG. Shortly after his report, HYG demoted Daniels to a newly created administrative position, claiming he lacked the required qualifications for the NAM role. But then HYG gave the position to a less experienced employee. This development signaled to Daniels that HYG demoted him in retaliation for his whistleblower activity.

HYG brought a counterclaim against Daniels for allegedly violating federal and state law related to trade secrets and confidential information, claiming that Daniels downloaded this information to his personal devices in violation of his Employee Confidential Information and Invention Agreement before resigning from HYG and going to work for a competitor. Am. Counterclaim, D.E. 18.

As part of discovery, Daniels served interrogatories, requests for production of documents, and requests for admission on HYG. D.E. 39–1. Daniels believes HYG did not respond satisfactorily and he now asks the court to compel it to supplement its responses to several interrogatories and requests for production.[1]

## I.    Background

HYG is a subsidiary of a publicly traded company that designs, engineers, manufactures, sells, and services forklift trucks. Second Am. Compl. ¶2. In 2016, HYG tried to win a contract from Amazon, which "had the potential to produce more than $50 million in annual sales" and was HYG's "number one priority." *Id.* ¶19. During the pitch process, Amazon asked HYG to make a technical specialist on HYG's sales team the primary point of contact for negotiations. *Id.* ¶22. HYG selected Daniels. *Id.*

HYG hired Daniels in 2013 as a manufacturing engineer. *Id.* ¶17. Soon the company promoted Daniels to a manager position. *Id.* ¶18. It then promoted him to the role of warehouse simulations engineer for North and South America. *Id.* When HYG recruited Daniels to work with Amazon, he kept the title of lead warehouse simulations engineer, but "worked primarily in sales on the Amazon account." *Id.* ¶23. Daniels communicated directly with Amazon representatives about "the capabilities and technical aspects of HYG products" and helped persuade Amazon to award site-supply contracts to HYG. *Id.* ¶24.

HYG won several contracts from Amazon and began supplying forklift trucks and other equipment at multiple Amazon sites. *Id.* ¶25. When Chuck Tolley, HYG's national accounts manager (NAM) for Amazon during the bid process, became executive business manager, HYG made Daniels the NAM for Amazon. *Id.* ¶¶ 26, 29.

---

[1] Daniels's motion refers to more discovery requests than the court addresses in this order. This is because between the time of the motion's filing and the hearing on this matter the parties resolved their disputes over some of the discovery requests. This order only addresses those matters still at issue.

2

Through its contracts, HYG supplied battery-powered forklift trucks to Amazon. *Id.* ¶39. The batteries in these trucks needed to be watered to perform properly, and Tolley subcontracted the maintenance work for the batteries to H2O Battery Pro, LLC. *Id.* ¶¶ 41, 44. H2O Pro representative Tina Erickson handled all correspondence between H2O Pro, Amazon, and HYG. *Id.* ¶47.

From November 2016 until September 2017, Amazon complained about battery performance in the forklifts. *Id.* ¶50. According to Amazon, the batteries would appear fully charged while in their docking units, but when placed in the forklift trucks, would show a charge of 60% or less. *Id.* ¶51. Having a less-than-fully charged battery interfered with the ability of Amazon's forklift operators to maintain their schedules and caused operational loss. *Id.* ¶¶ 52−53.

H2O Pro blamed the battery malfunctions on Amazon operator user error. *Id.* ¶55. But the HYG team discussed that the charging problems were likely caused by improper watering by H2O Pro. *Id.* ¶58. Using improperly watered batteries was dangerous because after the water evaporated, the batteries gave off highly explosive gas which if combined with a spark—created when turning the machine on or otherwise operating the forklift—could ignite an explosion. *Id.* ¶¶65−67. But Tolley insisted the improper watering was not causing the battery issues and that H2O Pro was performing well. *Id.* ¶60.

In August 2017, Daniels learned from a coworker that a person named Weston Tolley was tied to H2O Pro. *Id.* ¶¶70−72. After checking business filings for H2O Pro, Daniels discovered that Chuck Tolley was H2O Pro's managing member and that H2O Pro had only one employee: Weston Tolley. *Id.* ¶¶74−75. Weston Tolley is Chuck Tolley's son and had no experience in maintaining batteries. *Id.* ¶¶75−76. Daniels also discovered that Tina Erickson is

3

Chuck Tolley's wife and did not have any experience in battery maintenance. *Id.* ¶¶77, 81. Daniels believed Chuck Tolley, an HYG executive employee, had engaged in fraud, acted in his own financial interest, and deprived HYG of his honest services by awarding a maintenance contract to H2O Pro without disclosing his personal involvement. *Id.* ¶98.

Daniels reported this information to David Furman, HYG's president of sales for the Americas, and expressed concern about the safety implications of improperly maintained batteries and the effect of Tolley's fraud on HYG's business relationships and the Amazon contract. *Id.* ¶¶114−16. In September 2017, Tolley was "separated" from HYG. *Id.* ¶118. HYG then transitioned battery maintenance at the Amazon facilities from H2O Pro to Alta Equipment. *Id.* But HYG did not disclose information about Tolley to Amazon or HYG's shareholders. *Id.* ¶122.

Shortly after Daniels went to Furman, a battery exploded on an HYG forklift at an Amazon facility in Charlotte, North Carolina. *Id.* ¶124. An investigation showed that "low water levels resulted in plate-to-plate contact and the ignition that caused the explosion." *Id.* ¶126.

After HYG dismissed Tolley, it posted an opening for the NAM for Amazon position. *Id.* ¶146. For almost a year, Daniels had effectively worked in this position, working directly with Amazon, serving as a primary point of contact in meetings, and workings on other projects involving Amazon. *Id.* ¶¶129−133, 138−142, 144, 147. Daniels submitted several applications for the Amazon NAM position and spoke to HYG executives about his continued interest in the position. *Id.* ¶¶154, 175. But two high level executives who knew that Daniels had blown the whistle on Tolley's battery fraud—one of whom was close with Tolley—tried to give the NAM position to another employee. *Id.* ¶¶148−52. They told Daniels that he "was respected by the Amazon team and brought all the requisite technical knowledge and skill" to the position but

ultimately determined he "lacked the minimum required sales experience to manage the account." *Id.* ¶¶155–56. In October 2017, HYG awarded the NAM position for the Amazon account to David McNeill. *Id.* ¶161.

Daniels maintains that his "purported lack of sales experience was a pretextual reason" for declining to give him the position. He claims that the real reason HYG did not consider him was because he "engaged in protected whistleblower activity." *Id.* ¶¶158, 160. McNeill worked as an engineer and had no sales experience; he was less qualified than Daniels and failed to meet the formal position requirements. *Id.* ¶¶161−62. In fact, Daniels had more relevant sales experience than McNeill, having effectively worked in the NAM role for over a year, and more technical knowledge of design and automation. *Id.* ¶¶166, 172.

One month before HYG named McNeill the NAM for Amazon, Daniels walked into a conference room for a meeting and interrupted a conversation among coworkers about the implications of "what happened to [Tolley]." *Id.* ¶¶181−83. He was immediately asked to leave the room, which made him uncomfortable. *Id.* ¶¶185, 187. Daniels reported his concern to human resources that "his whistleblowing activity was being discussed openly by his coworkers and supervisor." *Id.* ¶187. But HYG took no action in response to his concerns. *Id.* ¶¶188−90.

In January 2018, Daniels filed a report through the HYG hotline and expressed concern that HYG might try to demote him. *Id.* ¶191. After McNeill became NAM for Amazon, Daniels had asked HYG to laterally reassign him as a NAM to another account, but that hadn't happened. *Id.* ¶177. Twelve days after filing the hotline report, HYG demoted Daniels "from an executive-level position as a national account manager to a non-sales, administrative position as 'customer experience manager.'" *Id.* ¶192. HYG created this customer experience manager position specifically for Daniels. *Id.* ¶¶195−97. It eliminated his direct contact with the Amazon team and

decreased his responsibilities at HYG. *Id.* ¶206. The next day, Daniels resigned from HYG. *Id.* ¶203.

Several months later, in July 2018, Daniels filed a complaint with the U.S. Department of Labor "alleging that HYG violated Title VIII of Sarbanes Oxley, by retaliating against him for engaging in protected activity under the Act." *Id.* ¶8. And in November he sued HYG in federal court.[2] D.E. 1–1.

## II.    Analysis

The Federal Rules allow parties to "obtain discovery regarding any unprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Considerations of proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* But the court retains the authority to limit the "frequency or extent of discovery" if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.* 26(b)(2)(C)(i).

Under the Federal Rules, a party may move to compel discovery when another party fails to answer interrogatories or produce documents. Fed. R. Civ. P. 37(a)(3)(B)(iii)−(iv). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection, Inc.* v. *Kirklands, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). To meet this burden, the non-moving party "must make a particularized

---

[2] Daniels filed his complaint in the Western District of North Carolina, but that court transferred the matter to this court in November 2019.  D.E. 26.

showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.*

As part of discovery Daniels served interrogatories and requests for production of documents on HYG in November 2019. D.E. 39–1. The parties did not have a protective order in place or an agreement about search terms for electronically stored information (ESI). Mot. to Compel ¶¶14−15, D.E. 39. After a telephone conference with Judge Flanagan, the parties entered a consent protective order, D.E. 38, but have still not agreed on ESI search terms, Mot. to Compel ¶15. In February 2020, Daniels served amended interrogatories on HYG, limiting the scope of nine interrogatories as directed by Judge Flanagan. Mot. to Compel ¶22. HYG then supplemented three of Daniels's interrogatories and provided supplemental answers to several of Daniels's requests for documents. *Id.* ¶¶23−24. The parties have met and conferred but have failed to agree on the requested discovery. *Id.* ¶17.

Daniels argues that HYG served "non-responsive and incomplete responses" to his discovery requests, "repeated the same rote objections to nearly every discovery request," and that its supplemental responses provide little to no additional information. *Id.* ¶¶11−13; *see* D.E. 39–4. He asks the court to compel HYG to "provide full and complete response, without objection" to the identified interrogatories and requests for production. Mot. to Compel ¶27.

HYG opposes Daniels's motion for three reasons. First, it submits that its responses to Daniels's amended interrogatories were not due until after Daniels filed his motion. D.E. 42 at 1. Second, HYG says that it has objected to, answered, or responded to Daniels's discovery requests and therefore Daniels's motion is moot. *Id.* And third, HYG alleges Daniels "seeks information in gross disproportion to the needs of the case and what the Rules require." *Id.*

The court will now examine the issues raised by the interrogatories and requests for production of documents in issue.

### A.    Timing of Filing the Motion to Compel

HYG claims that the court should deny Daniels's motion outright because it was premature. It maintains that its responses to Daniels's amended discovery requests were not due until March 16, 2020, making Daniels's motion, filed on March 2, 2020, two weeks early. During the telephonic hearing on this matter, Daniels's counsel stated that they filed the motion on March 2, 2020, because that was the deadline set by the court for filing such a motion. While the more appropriate step would have been to ask for an extension of the deadline, the court will not penalize Daniels for complying with a court order.

### B.    Boilerplate Objections

Daniels submits that HYG "repeated the same rote objections to nearly every discovery request" in its responses. Mot. to Compel ¶13. Objections to requests for production of documents must "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). An objecting party must also "state whether any responsive materials are being withheld on the basis of that objection." *Id.* 34(b)(2)(C). Objections to interrogatories similarly "must be stated with specificity." *Id.* 33(b)(4). And any ground not stated in an objection is considered waived. *Id.*

Because of the requirement for specificity in objections, boilerplate objections without support are disfavored and may be stricken by the court. *Kinetic Concepts, Inc.* v. *ConvaTec, Inc.*, 268 F.R.D. 226, 241 (M.D.N.C. 2010) ("[M]agistrate judges in at least five district courts in the Fourth Circuit have declared boilerplate objections to discovery requests, including for documents, invalid.") (citing cases); *Hy-Ko Prods. Co.* v. *Hillman Grp., Inc.*, No. 5:09-MC-

8

00032, 2009 WL 3258603, at *2 (E.D.N.C. Oct. 8, 2009) ("Generally, the mere cry of burdensomeness or irrelevance without any statement in support of these objections is disfavored by the court."); *Silicon Knights, Inc. v . Epic Games, Inc.*, 917 F. Supp. 2d 503, 533 (E.D.N.C. 2012) (granting motion to compel where plaintiff's responses to defendant's interrogatories and requests for production "comprise[d] nothing but a laundry list of boilerplate objections" and "failed to articulate any specific objection to any particular interrogatory or request for production").

Nearly all of HYG's responses to Daniels's interrogatories and requests for production contain some version of: "Defendant objects to Plaintiff's Interrogatory Number [] because it is vague, ambiguous, overly broad and unduly burdensome in disproportion to the likelihood of the production of information likely to lead to the discovery of information that is relevant to the claims or defenses in this case."

This repeated use of a boilerplate objection with no explanation about why HYG believed an interrogatory or request to be objectionable violates the Federal Rules' specificity requirement and leads to a waiver of the objections. *See Mainstreet Collection, Inc.*, 270 F.R.D. at 240 (quoting *Momah* v. *Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996)) ("'Mere recitation of the familiar litany that an interrogatory or a document production request is overly broad, burdensome, oppressive, and irrelevant' does not suffice as a specific objection."). Thus, the court finds that HYG has waived this objection to Daniels's interrogatories and requests for production. The court will not consider them in assessing the sufficiency of HYG's responses.[3]

---

[3] HYG also includes boilerplate language at the end of each response saying that it "reserves the right to amend, change, modify, and/or supplement" its responses. This language serves no purpose−as it cannot reduce or enlarge HYG's obligations under the Federal Rules−other than to create confusion about the completeness of its response.

9

### C.     Interrogatory 1

In its first Interrogatory, Daniels seeks the identity of anyone with knowledge related to the factual allegations in the pleadings or otherwise are known to have discoverable information. In its supplemental response, HYG referred Daniels to its initial disclosures under Rule 26(a)(1), its previous responses to this interrogatory (which contained no responsive information), and 525 pages of documents produced in response to requests for production of documents.

The Federal Rules require that a party responding to an interrogatory do so "fully in writing under oath." Fed. R. Civ. P. 33(b)(3). So unless a party is invoking the option to respond by producing business records under Rule 33(d), it is generally inappropriate to respond to an interrogatory by referencing other documents, pleadings, depositions, or other responses to written discovery. *See Small* v. *WellDyne, Inc.*, No. 5:17-CV-62-BO, 2017 WL 2484181, at *6 (E.D.N.C. June 8, 2017); *Heuskin* v. *D&E Transp., LLC*, No. 19–957, 2020 WL 1450575, at *3 (D.N.M. Mar. 25, 2020); *Spadaro* v. *City of Miramar*, No. 11–61607, 2012 WL 12862641, at *6−*7 (S.D. Fla. Apr. 25, 2012); *Scaife* v. *Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000); *Martin* v. *Easton Pub'n Co.*, 85 F.R.D. 312, 315 (E.D. Pa. 1980).

HYG has not provided the court with any reason why it should depart from this general rule. Thus, unless it explicitly and appropriately invokes Rule 33(d), it shall supplement its interrogatory response to provide the requested information without reference to documents outside the interrogatories.

Daniels also complains that HYG did not provide contact information for certain individuals named in their Rule 26 disclosures. HYG claims that they either lack current contact information for certain individuals or that Daniels must go through counsel to contact witnesses. Neither argument is persuasive.

This interrogatory should be largely unnecessary because the Federal Rules explicitly require parties to turn over the names of individuals likely to have discoverable information along with their "address and telephone number[.]" Fed. R. Civ. P. 26(a)(1)(A)(i). In the context of initial disclosures, courts have repeatedly held that because of the Rule's specific instruction to turn over an individual's address and telephone number, a responding party does not comply with the Federal Rules when they fail to provide this information and, instead, say that the person can be contacted through counsel for a party.[4] *See Tamas* v. *Family Video Movie Club, Inc.*, 304 F.R.D. 543, 545−46 (N.D. Ill. 2015); *Sec. Alarm Fin. Enters., Inc.* v. *Palmer*, No. 1:12-CV-88, 2012 WL 12892393, at *5 (N.D.W. Va. Dec. 4, 2012); *Bowman* v. *Green Tree Servicing, Inc.*, No. 3:12−CV−31, 2012 WL 4849718, at *3 (N.D.W. Va. Oct. 11, 2012); *Thurby* v. *Encore Receivable Mgmt., Inc.*, 251 F.R.D. 620, 621−22 (D. Colo. 2008). There is no reason to reach a different conclusion when the information is sought through an interrogatory.

And the fact that HYG is unsure if they have the most accurate current address for an individual does not relieve them from complying. The instructions included with the interrogatories do not request that HYG provide a person's current contact information. D.E. 39–1 at 3. Instead, it asks HYG to provide "all known" contact information for a person identified in the interrogatory. *Id.* So HYG must provide the information requested by the interrogatory even if it is unsure whether the information is current. If HYG is completely without contact information for an individual, they shall explicitly say so.

---

[4] While the disclosing party must provide contact information for individuals who may have discoverable information, all parties are still subject to the limitations on contacting represented parties or the employees of represented parties imposed by the North Carolina Rules of Professional Conduct and the Local Rules of this court. *See* Local Civil Rule 83.1(i), E.D.N.C. (adopting the North Carolina Rules of Professional Conduct as the ethical standard governing the practice of law in this court).

### D.    Interrogatory 3

In his third interrogatory, Daniels asked HYG to identify any written or recorded statements made by a party or witness. He also asks for certain information about the origin and current location of any such statements. In response, HYG identified two affidavits by Suzanne S. Taylor that were submitted as attachments to exhibits.

During the hearing on Daniels's motion, HYG stated that it was not withholding any responsive documents. Daniels appears satisfied with this information. There is thus no need to supplement this response.

### E.    Interrogatory 5

Daniels requests, in his fifth interrogatory, the identity of all persons who participated in maintenance of HYG equipment or batteries on HYG equipment at Amazon facilities from October 1, 2016, to the present. He also asks for an explanation of how each person was involved in the maintenance.

HYG's response to the interrogatory is multifaceted. It begins by objecting that the interrogatory seeks information outside the period when H2O Pro maintained batteries on HYG trucks. It then objects that the interrogatory seeks information about batteries not maintained by H2O Pro or used on trucks at Amazon facilities. In its latest response, HYG refers Daniels to its original response—which provided no responsive information. It also identifies two individuals who H2O Pro employed but does not identify any HYG employees involved in battery maintenance. HYG maintains that there are no HYG employees who performed battery maintenance.

HYG's answer does not provide all the information requested by the interrogatory. Along with seeking information on H2O Pro employees, it asks HYG to identify "those persons who

12

acted on behalf of HYG in relation to H2O Pro." D.E. 42–1 at 5. HYG shall supplement its responses to identify any HYG employees who interacted with H2O Pro employees regarding the maintenance of HYG equipment or batteries on HYG equipment at the Amazon facilities from October 1, 2016, until the date Daniels filed this action. It shall also detail how each person interacted with H2O Pro.

### F.    Interrogatory 6

Daniels asks HYG to identify, by type, the number of HYG equipment present at each Amazon facility on a monthly basis between January 1, 2016, and December 1, 2017. HYG responds by objecting to the period covered by the interrogatory and that it calls for confidential and proprietary information. It then directs Daniels to its response to a request for production.

HYG's response is insufficient. For the reasons discussed above, referring Daniels to a request for production of documents is an inappropriate way to respond unless the party is specifically invoking Rule 33(d).

HYG's objection about the confidential and proprietary information fares no better. This objection stems from HYG's claim that its contractual obligations with Amazon prevent it from disclosing this information. The objection is unpersuasive.

The most important factor in the court's analysis is the fact that HYG has not provided the court with the relevant contractual language. This failing is enough, by itself, to reject HYG's argument. The court is unable to independently assess the scope of HYG's obligations to Amazon under the contract. Such information would help make sense of the fact that HYG can provide some information about its relationship with Amazon but not enough to respond fully to Daniels's requests. What's more, a review of the contractual language would help the court

properly assess the burden that would result from requiring HYG to comply and balance that against the value of the information to be obtained.

Also weighing against HYG's refusal to fully respond is the fact that the Federal Rules do not make confidential business information immune from discovery. Instead, the Rules envision the court entering a protective order to determine whether and how confidential information is to be disclosed. Fed. R. Civ. P. 26(c)(1)(G). The court has entered a protective order that allows parties to limit the use and disclosure of confidential information. D.E. 38. HYG has not explained why the protective order is inadequate to safeguard the confidential nature of this information.

And information about HYG's relationship with Amazon appears to be central to this case. Daniels's whistleblower claim is based, at least in part, on the argument that HYG retaliated against him because his discovery would jeopardize its relationship with a major customer. Thus, inquiry into the nature and extent of that relationship is appropriate. HYG shall supplement its response to provide the requested information.

### G.    Interrogatory 8

In Interrogatory 8, Daniels seeks information about "all Battery-related explosions, accidents, and/or other malfunctions resulting in loss to property and/or personal injury, as known by you to have occurred on HYG equipment dating to January 1, 2020" including a specific incident in Charlotte, North Carolina in November 2017. HYG objects on several grounds, including that the interrogatory asks for information outside the time when H2O Pro maintained the batteries on HYG trucks and because it seeks information on batteries not maintained by H2O Pro or used at non-relevant Amazon sites. After its objections, HYG

identified the incident in Charlotte mentioned in the request and referred Daniels to its response to a request for production.

To begin with, HYG did not provide all the requested information about the incident it identified in the response. The request calls for specific information about each incident, beyond the mere fact that it occurred, and HYG did not provide that additional information. HYG must supplement its response to provide all the requested information for the Charlotte incident and any other incidents it identifies.

Daniels claims that he seeks a broad scope of information in this interrogatory because it relates to one of the central aspects of this case: the allegation that failure to properly maintain the batteries on HYG forklifts can cause them to explode. HYG disagrees and claims that this case is about Daniels's report of an employee engaging in self-dealing and that the battery maintenance issue is ancillary to the core of the case.

The accuracy of Daniels's beliefs about the battery fraud issues are relevant. To establish his Sarbanes-Oxley whistleblower claim he must show, among other things, that he "engaged in protected activity[.]" *Welch* v. *Chao*, 536 F.3d 269, 275 (4th Cir. 2008). This element of Daniels's claim depends on whether he "possessed both a subjective belief and an objectively reasonable belief that the conduct complained of constituted a violation of relevant law."[5] *Id.* at 277 n.4. Thus he must show "both that he actually believed the conduct complained of constituted a violation of pertinent law and that 'a reasonable person in his position would have believed that the conduct constituted a violation.'" *Id.* (quoting *Livingston* v. *Wyeth, Inc.*, 520 F.3d 344, 352 (4th Cir. 2008)).

---

[5] The relevant laws are "mail fraud, wire fraud, bank fraud, securities fraud, any SEC rule or regulation or any federal law relating to fraud against shareholders." *Northrop Grumman Sys. Corp.* v. *U.S. Dep't of Labor, Admin. Review Bd.*, 927 F.3d 226, 229 (4th Cir. 2019).

Daniels's allegations about battery fraud stem from, in part, the allegation that HYG committed fraud by hiding the potential consequences of the insufficient watering, which he claims included the potential for explosions. Second Am. Compl. ¶¶ 99, 101. Thus, this information is relevant to his claim and a proper subject of discovery. HYG will supplement its response to provide the requested information.[6]

### H. Interrogatory 12

In Interrogatory 12, Daniels asks HYG to identify communications it had with various companies that involve complaints about batteries or battery performance generally between October 2016 and December 2018. HYG objects to the temporal scope of the request and complains that Daniels has not identified the custodians who may be in possession of responsive information and that the parties have not agreed to search terms.

The court has reviewed the parties' correspondence and has determined that these parameters will govern the search for information responsive to this request. The relevant custodians will include the individuals listed in HYG's proposed parameters (D.E. 43–3) and the individuals listed in paragraph 4 of the February 20, 2020 email from Eric Spengler (D.E. 43–4). The relevant date range will be October 1, 2016, to March 1, 2018. For the reasons stated below, the court will not modify the keyword parameters selected by HYG. The parties may agree to modify the terms of this paragraph.

### I. Interrogatory 14

Interrogatory 14 seeks information about HYG's response to Daniels's complaint about potential battery fraud and Chuck Tolley's connection to H2O Pro. It asks HYG to outline the

---

[6] HYG claimed it was unclear about what Daniels meant by the term "loss to property." During the hearing on this matter, Daniels explained that this meant property other than the battery itself.

actions it took in response to Daniels's complaint and the persons involved in the response. HYG responds by saying that it determined that Tolley had a familial connection to H2O Battery Pro, LLC and then refers Daniels to a response to a request for production of documents. Daniels argues that this response is insufficient.

HYG's response is deficient. For the reasons discussed above, referring Daniels to a request for production of documents is an inappropriate way to respond unless the party is specifically invoking the provision of Rule 33(d). HYG must supplement its response to specifically state the steps it took to investigate Daniels's complaint in August 2017 from the time it first learned of the allegation. It shall also specifically identify any individuals involved, directly or indirectly, in the investigation.

### J.       Interrogatory 16

Interrogatory 16 relates to information Daniels provided in response to an interrogatory from HYG. HYG's interrogatory asked Daniels to identify all HYG employees he had reason to believe knew of his complaint to management about Tolley's connection to H2O Pro. As amended, Interrogatory 16 asks HYG to provide the date that each person he identified learned or had reason to know of his complaint to management. He also seeks the source of each person's knowledge.

HYG provided responsive information for several individuals Daniels identified, but not all of them. HYG shall supplement its response to provide responsive information for all individuals Daniels identified in his interrogatory response. If certain individuals are unaware of Daniels's involvement, HYG should state so in its response.

### K.    Interrogatory 17

Daniels asks HYG to provide information regarding certain people affiliated with H2O Pro in Interrogatory 17. HYG refers Daniels to its response to Interrogatory 14, which deals with its investigation into Tolley's actions, and several responses to requests for production of documents.

The court has reviewed HYG's response and finds that it is inadequate. HYG will supplement its response to provide information within its knowledge about the role of Weston Tolley, Tina Erickson, Chuck Tolley, and any other individuals identified in discovery or in the pleadings who were an agent or employee of H2O Pro. The response will also identify for each person, if it is known by HYG, their credentials, job history, and relevant experience or expertise as it relates to the maintenance of forklifts and/or related battery maintenance. The response shall not refer to documents outside the interrogatory response unless HYG explicitly and properly invokes Rule 33(d).

### L.    Interrogatory 18

In his eighteenth interrogatory, Daniels seeks an explanation of why HYG terminated Tolley and asks it to identify "all documents evidencing the decision to terminate Tolley's employment." It appears HYG's original response sets out the reason it terminated Tolley, but HYG has not responded to the portion asking for the identification of documents. HYG shall supplement its response to identify the documents requested in the interrogatory.

### M.    Interrogatory 22

Daniels's twenty-second interrogatory, as amended, asks for HYG's sales to Amazon from 2015 to 2019. HYG has objected to the interrogatory's timeframe and the fact that it seeks

confidential and proprietary information. Despite those objections, HYG gave a description of where Amazon ranked in terms of its various accounts.

The timeframe is appropriate so that Daniels can obtain a proper overview of the importance of Amazon to HYG's operations. Daniels's Second Amended Complaint discusses the negative impact losing Amazon's business would have on HYG and the company's insistence in keeping Amazon happy. The requested information is necessary for Daniels to develop this aspect of his claims. The requested information will show the revenue HYG obtained from Amazon just before the 2016 contract and for several years afterwards.

And as discussed above, HYG has not shown that its confidentiality obligations to Amazon are so weighty that they outweigh the value of this information to the litigation. HYG shall supplement its response to provide the requested information.

### N.    Interrogatory 23

Interrogatory 23 seeks the amount and models of trucks HYG sold to Amazon and the commission HYG employees earned from those sales. HYG objected to this interrogatory because it called for confidential and proprietary information. It then provided the amount of commissions that would have been payable to Daniels in 2018 and 2019. HYG's response is unresponsive and the arguments in support of its objection, as discussed above, are unpersuasive. Thus, it must supplement its response to this interrogatory to provide the requested information.

### O.    Interrogatory 25

Daniels ask HYG to explain the amount and nature of the damages it seeks to recover from him in Interrogatory 25. HYG objects because the request seeks confidential and

proprietary information. It then states that "[i]t is premature to calculate damages at this point in the litigation as the harm is cumulative and on-going." D.E. 39–4 at 16−17.

HYG's response is inadequate. Interrogatories may be used to inquire into "any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(1). The amount of damages a party seeks falls comfortably within the scope of items that are "relevant to any party's claim or defense[.]" *Id.* 26(b)(1). And HYG has not argued that providing information on its damages would not be proportional to the needs of this case. Thus Daniels's request is appropriate and he is entitled to a response to it.

In fact, HYG should have already provided this information in its initial disclosures. Among the items that Rule 26 requires a party to provide without a request from the opposing party is "a computation of each category of damages claimed by the disclosing party" along with any supporting documents. *Id.* 26(a)(1)(A)(iii).

HYG has not explained why it cannot respond to this interrogatory. In its pleadings, it repeatedly asserts that Daniels's actions have caused damages in excess of $75,000. Am. Counterclaim ¶¶61, 77, 85, 90, 95, 101. That HYG's attorneys signed a pleading containing this assertion reflect that these "factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery [.]" Fed. R. Civ. P. 11(b)(3). This interrogatory simply requests that HYG provide evidentiary support for this assertion and any later calculations of damages.

HYG will supplement its response to provide the requested information. If HYG's damages calculation changes, it may supplement its response.

### P.    Request for Production 7

Daniels's seventh request for production seeks the offer letter and other communications by HYG in response to McNeill's job applications. HYG has produced no responsive documents other than the formal offer letter. If HYG has any other communications between it and McNeill regarding his job applications, it shall produce them.

### Q.    Request for Production 11

Request for Production 11 asks for all contracts between HYG and Amazon executed or in effect from January 1, 2016, to the present. HYG objects because the interrogatory "seeks confidential and proprietary information relating to Defendant's relationship with its customer Amazon." D.E. 39–4 at 22. As the court has repeatedly noted, this is not a valid basis to object to a discovery request. HYG shall produce the documents as requested.

### R.    Request for Production 12

Daniels seeks, in his twelfth request for production, all documents referencing the warrantees for East Penn Batteries as identified in Paragraphs 42 and 43 of the Second Amended Complaint. HYG objects to this request "because it fails to identify the batteries or to whom the warranties were provided[.]" D.E. 39–4 at 22. A review of the Second Amended Complaint shows that the reference to East Penn Batteries in Paragraphs 42 and 43 relates to, at least, batteries placed in battery-powered electric trucks at Amazon sites MDW2, MDW4, and MDW6. HYG shall provide responsive documents as requested.

### S.    Request for Production 19

Request for Production 19 seeks all accident reports for battery malfunctions identified in response to Interrogatory 8. HYG objected to this request for production on largely the same

grounds as it did the corresponding interrogatory. HYG shall produce responsive documents as requested.

### T.    Request for Production 20

Daniels asks HYG to produce training videos and other videos that relate to battery safety. HYG first objects to the scope of the request because it relates to batteries not maintained by H2O Pro or used on trucks at Amazon sites MDW2, MDW4, and MDW6. If HYG has videos that relate specifically to batteries maintained by H2O Pro or batteries used on trucks at the specified Amazon sites, it need only produce those. But otherwise, HYG must produce videos responsive to the request.

HYG then objects that the request "seeks information produced by someone other than HYG or third-party vendor H2O Pro[.]" D.E. 39–4 at 25. There is no basis for this objection. No matter who created the document, HYG must produce the videos so long as they are in its "possession, custody, or control[.]" Fed. R. Civ. P. 34(a)(1). Thus, HYG may not withhold responsive materials based on this objection.

### U.    Request for Production 40

Request for Production 40 asks for wage documents showing the compensation and benefits of various individuals. HYG claims that his request is inappropriate because it asks for "confidential personnel information and is duplicative of other Requests." D.E. 39–4 at 32. Given that the court has entered a protective order, the fact that this request may seek confidential personnel information is not an appropriate basis to withhold documents. And HYG has failed to show that this request is duplicative. It will supplement its response to produce the requested documents.

## V. Request for Production 41

Daniels asks, in Request for Production 41, HYG to produce all documents it sent to him notifying him of a planned change or actual change in his job title, job description, or compensation. He also specifically asks for documents sent on or around January 29, 2018, in HYG's Success Factor system. HYG claims that it has identified no responsive documents. HYG must make a good-faith effort to locate responsive documents and produce them if any are located. If it is unable to locate documents after its search, it shall state so.

## W. Request for Production 13–16 & 22–30

HYG objects to Requests for Production 13−16 and 22−30 because of a lack of defined search terms for electronically stored information (ESI). HYG objects that the requests "seek[] Electronically Stored Information without identifying individual custodians allegedly in possession of that information, and seeks communications relating 'in any way,' i.e., without limit, to Plaintiff" or the subject of the request for production, and that "in the absence of search parameters proportional to the needs of the case, the information requested is not reasonably accessible because of undue burden or cost."

The parties have not agreed on defined ESI search terms. HYG proposed search terms for each request, which included requiring up to four responsive terms to designate a document as responsive. D.E. 43–3. Daniels objected to these terms, arguing that HYG's requirement of multiple hits through its use of "AND" is restrictive and will result an overly narrow search that excludes responsive documents. D.E. 43–4. Daniels submitted that "at most, a proposed ESI search term should include two required terms"—not four. *Id.* at 1.

HYG ran a search using its proposed search terms and informed the court that its terms produced many hits—almost 25,000 files after de-duplication. Telephonic Conference at

58:04−58:40. Daniels counters that what is important is not the number of documents produced but their responsiveness. *Id.* at 59:49–1:00:01. At the time of the telephonic conference, HYG had just begun uploading responsive documents to the online platform. *Id.* 1:00:11–1:00:27.

HYG's proposed search terms for Requests for Production 13−16 and 22−30 range from requiring one to four individual terms before considering a document responsive. Seven requests require either four hits (14, 26, 27) or three hits (13, 15, 16, 23) before being considered responsive. D.E. 43–3. The remaining requests require two hits (22, 25, 29) or one (24, 28, 30). *Id.*

The court agrees that requiring one document to include four or more terms before considering it responsive could risk excluding some responsive documents. But the court's review of the proposed terms for each request requiring more than two hits to be labeled responsive reveals that for each, two of the required hits are basic terms that would likely apply to many, if not all, responsive documents, such as "Amazon," "HYG," "battery," and "account." Then the third or fourth terms required for responsiveness address terms specifically related to the subject of the request. Thus, the court finds that HYG's search terms for Requests for Production 13−16 and 22−30 appear reasonable in the context of the subjects of Daniels's requests.

But a defendant is not excused from producing responsive documents simply because a plaintiff does not agree to keyword search terms in a proposed ESI protocol. *See, e.g.*, *Treppel* v. *Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (holding that the defendant was justified in using keyword search terms to find responsive documents and should have "proceeded unilaterally" with its list of terms when the plaintiff refused to approve it; plaintiff's "recalcitrance" did not excuse defendant's failure to produce any documents). HYG has

conducted a document search using its proposed search protocol, but has not produced any of these documents to Daniels. The court therefore orders HYG to respond to Requests for Production 13–16 and 22–30 based on the results it has obtained through its search. After review of the responsive documents, if he believes the responsive documents are under-inclusive, Daniels should confer with HYG and, if the parties are unable to agree on modified search terms, he can ask the court to order amended search terms. *See, e.g.*, *Adair* v. *EQT Prod. Co.*, No. 1:10-cv-37, 2012 WL 1965880, at *5 (W.D. Va. May 31, 2012) (determining that "if the court orders [defendant] to turn over the emails retrieved by one or more of the filtered or keyword searches suggested by the parties, plaintiff's counsel would then bear the burden of review to inform the court whether the ESI produced was over-inclusive or under-inclusive" and "[i]f necessary, the court, with input from the parties, could order additional production based on further refined or broadened searches").

## III.    Attorney's Fees

Rule 37 provides that when a court grants in part and denies in part a motion compelling discovery, it may "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Before doing so, the court must give the non-moving party "an opportunity to be heard[.]" *Id.* Thus, HYG shall show cause within seven days from the date of entry of this order why the court should not award Daniels the reasonable expenses incurred in making the motion, including attorney's fees. Daniels may file a response within seven days after HYG files its response.  No reply brief will be allowed.

## IV.    Conclusion

The court grants Daniels's motion to compel in part and directs HYG to supplement its responses to Interrogatories 1, 5, 6, 8, 12, 14, 16–18, and 22–25 and to produce the documents

requested in Requests for Production 7, 11−16, 19, 20, 22−30, 40, and 41. HYG shall serve its supplemental responses within 21 days from the date of entry of this order.

HYG shall show cause within seven days from the date of entry of this order why the court should not award Daniels the fees and costs he incurred in making this motion.

Dated: May 11, 2020

Robert T. Numbers, II
United States Magistrate Judge